1
2
3
4
5
6

** E-filed on 6/24/05 **

7                          NOT FOR CITATION

8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                         **SAN JOSE DIVISION**

11

12   EDWARD L. SCARFF, et al.,                Case Number C 03-03850 JF

13                    Plaintiffs,             ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANT
14          v.                                JACKSON NATIONAL LIFE
                                              INSURANCE COMPANY'S MOTION
15   JACKSON NATIONAL LIFE INSURANCE          FOR SUMMARY JUDGMENT OR, IN
     COMPANY, et al.,                         THE ALTERNATIVE, PARTIAL
16                                            SUMMARY JUDGMENT
                    Defendants.
17                                            [Docket No. 42]

18

19        Defendant Jackson National Life Insurance Company[1] moves for summary judgment or,

20   in the alternative, partial summary judgment on the ground that each of the claims set forth in

21   Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted.

22   Plaintiffs oppose the motion. The Court has read the moving and responding papers and has

23   considered the oral arguments of counsel presented on March 18, 2005.[2] For the reasons set forth

24

25        [1] Jackson National Life Insurance Company is the only named Defendant. The other
     Defendants are "Does 1-10."
26

27        [2] The parties have filed objections to various parts of the declarations filed by the
     opposing party. A number of these objections concern evidence not considered or relied upon by
28

Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1 | below, the motion will be granted in part and denied in part.

2 | **I. BACKGROUND**[3]

3 | On April 1, 1985, Plaintiff Edward Scarff, as settlor, established the irrevocable Edward

4 | Louis Scarff Life Insurance Trust ("ELS Life Insurance Trust") and named his brother, Harold

5 | Scarff, as the trustee.[4] *See* Kearl Decl., Ex. B. On August 9, 1985, Edward Scarff submitted an

6 | application to Defendant Jackson National Life Insurance Company for an "Ultimate II" whole

7 | life insurance policy in the amount of $1,500,000 ("Policy"), naming himself as the insured

8 | party.[5] *See* Makara Decl., Ex. A. Both the owner and the beneficiary of the Policy, as stated in the

9 | application, were the Edward Louis Scarff 1985 Living Trust ("ELS 1985 Living Trust"). *See id*.

10 | The address given for the ELS 1985 Living Trust, which was the same as the business address for

11 | Edward Scarff, was 601 California Street, #1800, San Francisco, CA 94108 ("California Street

13 | the Court in reaching its decision, and therefore the Court does not address them. To the extent
14 | that the objections concern evidence discussed by the Court, the objections are so noted at appropriate places in this Order.

15 | [3] The Court has relied upon and, except where otherwise noted, discussed only the factual
16 | assertions that are supported by admissible evidence and cited adequately by the parties. The
17 | Court's analysis has been complicated by the fact that both parties have made assertions in their briefs that are not supported by proper citations to evidence.

18 | [4] Article One of the ELS Life Insurance Trust agreement provides that "[s]ettlor
19 | irrevocably assigns, conveys, transfers and delivers (or will soon transfer and deliver) to the
20 | trustee all of settlor's right, title and interest in the insurance policies described in Exhibit A
attached hereto and made a part hereof by this reference." Kearl Decl., Ex. B at ES08292. Article
21 | Two provides that "[t]he trustee shall possess and own all of the incidents of ownership, rights,
powers, interests, privileges and benefits of every kind that may accrue on account of any of the
22 | insurance policies included in the trust estate" and that "[s]ettlor shall have no interest or right of
23 | any kind in or to any of such insurance policies." *Id*. Management provisions in Article Seven
authorize the trustee, among other things, to "manage," "control," "sell," and "exchange" trust
24 | property, to "borrow money, and to encumber trust property as security therefor," and to
commence or defend litigation with respect to the trust or trust property. *Id*. at ES08303.

25 | [5] Jackson National objects to Edward Scarff's statements regarding how Jackson National
26 | and this particular life insurance policy were selected, claiming that Edward Scarff does not
establish his personal knowledge of these facts. Because the statements are immaterial to the
27 | disposition of the instant motion, the Court need not consider the objections.

28 |

Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1  address"). *See id*.

2  The Policy was issued on February 11, 1986.[6] *See* Makara Decl., Ex. D. On February 21,

3  1986, Edward Scarff and Harold Scarff executed an amendment to the Policy to remove the ELS

4  1985 Living Trust as owner and beneficiary and to name the ELS Life Insurance Trust as the new

5  owner. *See* Makara Decl., Ex. B. The Policy amendment did not provide a new address for the

6  ELS Life Insurance Trust or indicate that any change from the address that appeared on the

7  original application was necessary. *See id*. On March 10, 1986, Edward Scarff's personal

8  assistant, Carol Huang ("Huang"), mailed the Policy amendment to Jackson National with a

9  letter, printed on the letterhead of Edward Scarff & Associates, explaining the change and

10  requesting a check made payable to "Harold Scarff, Trustee of Edward Louis Scarff Life

11  Insurance Trust," for a premium that had been overcharged. *See* Makara Decl., Ex. C. Huang

12  requested that the check be sent to her attention. *See id*. Jackson National amended the Policy as

13  requested to identify the ELS Life Insurance Trust as owner and beneficiary. *See* Makara Decl.,

14  Ex. D.

15  Edward Scarff testified at his deposition that "once the policy was put in place, [he]

16  deemed [himself] not to have any involvement with the policy, other than to take care of

17  premiums" and that he "didn't focus on any correspondence between the trust and the life

18  insurance company." Kearl Decl., Ex. C at 98-99. In fact, he himself had no direct

19  communication with Jackson National between the time it issued the Policy to the ELS Life

20  Insurance Trust and September 19, 2002. *See* Kearl Decl., Ex. F (Interrogatory No. 4). Edward

21  Scarff also testified that he "never looked at . . . the records" of the Wells Fargo Bank account for

22  the ELS Life Insurance Trust. Kearl Decl., Ex. C at 128-30. Meanwhile, Huang has testified that

23  she signed the checks to pay the premiums on the Policy every year in accordance with Edward

24

_____

25  [6] The Policy provided that the "Policy and the application . . . constitute the entire

26  contract between the parties." Makara Decl., Ex. D at JNL0125. The Policy also provided that, "[w]hile . . . the Insureds are living, all rights of this Policy belong to the Owner." *Id*. at

27  JNL0126.

28
Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1   Scarff's instructions. *See* Kearl Supp. Decl., Ex. B at 26-27; Kearl Decl., Ex. G at 333-34; *see*

2   *also* Kearl Supp. Decl., Ex. B at 87-88 (testifying that, to the best of her recollection, Edward

3   Scarff asked her to "handle" the ELS Life Insurance Trust).[7] Jackson National's annual

4   statements for the Policy from 1991 and 1993 through 2002 reflect payment of the premium.[8] *See*

5   Makara Decl., Ex. T.

6       More than eleven years after the Policy was issued, Jackson National received a letter

7   dated September 26, 1997, purportedly signed by Harold Scarff as trustee of the ELS Life

8   Insurance Trust, transmitting a "Policy Loan Request" form.[9] *See* Makara Decl., Ex. E. The form,

9   dated October 3, 1997, requested a loan in the amount of $600,000, asked that the check be made

10  payable to "Edward L. Scarff" and sent to the attention of Huang at 601 California Street, #1450,

11  San Francisco, CA 94108,[10] and purportedly was signed by Edward Scarff, his wife, Nancy

12  Scarff, and Harold Scarff as trustee of the ELS Life Insurance Trust. *See id*. However, Edward

13  Scarff has declared that he did not authorize the request for a policy loan, that he did not sign the

14  "Policy Loan Request" form, that he was not requested to sign the form by Harold Scarff, and

15  that the signature that appears on the form is not his signature.[11] *See* Edward Scarff Decl. ¶¶ 4-6.

16

17      [7] Jackson National has submitted as evidence a copy of a check for $91,263.68 made out

18  to "Jackson National Life," drawn on the Wells Fargo Bank account of Pentoga Partners, a
    business associated with Edward Scarff, signed by Huang, and bearing the number of the Policy.

19  *See* Kearl Supp. Decl., Ex. B at 27; Kearl Supp. Decl., Ex. C.

20      [8] Neither party has submitted annual statements for the other years the Policy was in

21  effect.

22      [9] The Policy provided that "a policy loan may be obtained by the Owner by submitting a
    signed written request" and that the Policy would serve as "the sole security required for the

23  policy loan." Makara Decl., Ex. D at JNL0135.

24      [10] As noted previously, the suite number that appeared on the original insurance policy

25  application was #1800, not #1450. Otherwise, the addresses were the same.

26      [11] Edward Scarff also declares that, to the best of his knowledge, Harold Scarff did not

27  sign or send the "Policy Loan Request" form or the accompanying cover letter. *See* Edward
    Scarff Decl. ¶ 7. Jackson National objects to this statement as not being based on personal

28

1   Similarly, Nancy Scarff has declared that she did not sign the "Policy Loan Request" form and

2   that the signature that appears on the form is not her signature. *See* Nancy Scarff Decl. ¶ 3.

3   Jackson National asserts that there is a question of fact as to who did sign the form and cover

4   letter, as Edward Scarff was unable to testify at his deposition whether it was his signature on the

5   "Policy Loan Request" form,[12] and Huang was unable to determine at her deposition whether she

6   had signed the letter by looking at the signature, *see* Kearl Decl., Exs. J & K. However, Jackson

7   National contends that the validity of the signatures of Edward Scarff and Nancy Scarff on these

8   documents is immaterial, as there is no dispute that only Harold Scarff was authorized to act on

9   behalf of the ELS Life Insurance Trust. No declaration or testimony from Harold Scarff has been

10  submitted to the Court. *See infra* note 26. Thus, although Plaintiffs assert that Huang forged

11  Harold Scarff's signatures on these documents, there is no admissible evidence as to the source

12  of Harold Scarff's signatures.[13]

13      Jackson National responded to the "Policy Loan Request" form with a letter dated

14  October 10, 1997, addressed to the ELS Life Insurance Trust,[14] requesting copies of the trust

15

16  knowledge. As the statement is immaterial to the decision on the instant motion, the Court need

17  not rule on the objection.

18  [12] When Edward Scarff was presented with a copy of the "Policy Loan Request" form, the
    following exchange took place: "[Q.] [T]he first time you saw that document is when it was

19  provided to you by Jackson National Life? A. Yes. Q. . . . [O]ne signature on that page is barely
    legible. It appears to be yours, but I'll grant you it's almost impossible to tell. Do you have

20  anyway [sic] of knowing whether that is in fact your signature on that document? A. I can't read
    it well enough to know. Q. You don't know for sure one way or the other, whether it's yours? A.

21  No." Kearl Decl., Ex. C.

22
    [13] As to all of the allegedly forged signatures of Edward Scarff and Harold Scarff at issue

23  in this case, both parties invite the Court to compare the signatures itself in order to discern the
    degree of similarity to their authentic signatures. However, neither party has submitted testimony

24  or declarations from a handwriting expert. Any opinion of the Court concerning the similarity or
    dissimilarity of the signatures in the context of a motion for summary judgment would appear to

25  constitute inappropriate fact-finding.

26
    [14] Contrary to Plaintiffs' assertion, *see* Opp'n at 9, this letter was addressed to

27  "Policyowner" and was not sent directly to the attention of Huang, *see* Makara Decl., Ex. F.

28
    Case No. C 03-03850 JF
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
    INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
    SUMMARY JUDGMENT
    (JFLC1)

1    paperwork, including the signature pages. *See* Makara Decl., Ex. F. This letter was sent to the

2    California Street address that appeared on the original application for the Policy. *See id*. On

3    October 14, 1997, Huang called Jackson National and asked what trust paperwork was needed to

4    complete the loan process. *See* Gregory Opp'n Decl., Exs. 8-9. Helen Ganzhorn ("Ganzhorn"), a

5    telephone service representative for Jackson National, spoke to Huang by telephone and

6    explained that Jackson National needed the cover and signature pages from the trust document.

7    *See id*. Huang told Ganzhorn that she would send the paperwork with the original loan request

8    form to Ganzhorn's attention. *See id*. The requested documents were transmitted to Jackson

9    National by a letter dated October 16, 1997, which was printed on the letterhead of Scarff, Sears

10   & Associates and signed by "Carol Huang, Personal Assistant to Mr. Scarff." Makara Decl., Ex.

11   G.

12       On October 20, 1997, Jackson National issued a check in the amount of $600,000 ("Loan

13   Check").[15] *See* Makara Decl., Ex. H. The Loan Check itself was made payable to the ELS Life

14   Insurance Trust at the California Street address. *See id*. However, the Loan Check was sent via

15   FedEx to the attention of Huang at 601 California Street, #1450, which was the address provided

16   in the original letter dated September 26, 1997, requesting the loan. *See* Gregory Opp'n Decl.,

17   Ex. 9; Makara Decl., Ex. E. On October 22, 1997, the Loan Check was deposited into the Wells

18   Fargo Bank account for the ELS Life Insurance Trust ("Trust Account").[16] *See* Kearl Decl., Ex. P

19   ───────────────

20       [15] Mark Smith ("Smith"), the director of Jackson National's customer service center, has
21   testified that Jackson National "generally" handles policy loan requests for life insurance policies
     owned by irrevocable life insurance trusts by (1) ensuring that adequate money is available in the
22   policy for a loan, (2) comparing the signatures on the request and on the original application to
     ensure that the trustee has signed the request, (3) entering the loan amount into the system, and
23   (4) producing a check the following day. *See* Kearl Decl., Ex. E at 41-42, 44. If comparison of
     the signatures reveals some dissimilarity, a notarized signature might be requested. *See id*. at 52-
24   53. However, this testimony did not address the steps actually taken with respect to the "Policy
25   Loan Request" form at issue in this case.

26       [16] It is unclear who endorsed the Loan Check. Jackson National presents evidence of a
     handwritten note made by one of its investigators that Edward Scarff called Jackson National on
27   October 7, 2002, and "indicated he signed [the Loan Check]—no forgery." Kearl Decl., Ex. M;

28                                                     6

at CH02532, CH02537; Kearl Supp. Decl., Ex. D at WFB07212. On the same day, $600,000 was transferred from the Trust Account to the Wells Fargo Bank account for Pentoga Partners. *See* Kearl Decl., Ex. P at CH02533-34. Huang is alleged subsequently to have misappropriated these funds for her own benefit. *See* First Am. Compl. ¶ 29. By letter dated October 23, 1997, Huang thanked Ganzhorn for sending the Loan Check so quickly and requested that all future Policy-related bills and statements be mailed to her attention at the new suite number of #1450. *See* Gregory Opp'n Decl., Ex. 14 at Ex. 24. Huang signed the letter as "Personal Assistant to Mr. Scarff & Executive Administrative Assistant for the Trust." *Id*. Jackson National's annual statements for the Policy for 1998 through 2002 reflect that there was an outstanding loan balance on the Policy. *See* Makara Decl., Ex. T.

More than three years later, Jackson National received a letter dated March 15, 2001, on the letterhead of "Edward L. Scarff," notifying Jackson National of the immediate termination of the Policy and requesting that a check for the net cash surrender value[17] be made payable to "Edward L. Scarff" and sent to the attention of Huang at the "new mailing address" of 182 Howard Street, #539, San Francisco, CA 94105 ("Howard Street address"). *See* Makara Decl., Ex. I. The letter purportedly was signed by Edward Scarff and by Harold Scarff as trustee. *See id*. However, Huang has testified that she forged Harold Scarff's signature,[18] *see* Gregory Opp'n Decl., Ex. 3, and Jackson National does not dispute that Huang forged the signatures on this letter, *see* Reply at 5 n.6. Jackson National responded with a letter dated April 10, 2001, requesting a copy of the trust agreement and all trustees' signatures and titles. *See* Makara Decl.,

---

*see also* Kearl Decl., Ex. L. This note was written on a copy of a form Edward Scarff otherwise could have used to make a sworn statement that the endorsement on the Loan Check was a forgery. *See* Kearl Decl., Ex. M.

[17] The Policy provided that the "Owner may surrender this Policy for its Net Cash Value while the Insured is living." Makara Decl., Ex. D at JNL0129.

[18] Specifically, Huang has testified that she forged Harold Scarff's signature on a letter requesting "withdraw on the policy" sometime between the late 1990s and 2002. Gregory Opp'n Decl., Ex. 3.

7

1  Ex. K. The letter was addressed to the ELS Life Insurance Trust but sent to the attention of

2  Huang at 202 The Crossways, Berkeley, CA 94708-1506.[19] *See id.* Jackson National used this

3  address because its February 2001 bill for the Policy premium was returned by the Postal Service

4  with the Berkeley address.[20] *See* Makara Supp. Decl., Ex. A at JNL0155.

5      Almost one year later,[21] Jackson National received a letter dated January 15, 2002, from

6  "Carol Huang, Personal Assistant to Mr. Scarff, Executive Administrator," on the letterhead of

7  "Edward L. Scarff." *See* Makara Supp. Decl., Ex. B. In this letter, Huang repeated her request

8  that all invoices and correspondence regarding the Policy be sent to the Howard Street address.

9  *See id.* Then, approximately two months later, Jackson National received a faxed letter dated

10  March 26, 2002, from "Carol Huang, Personal Assistant to Mr. Scarff," on the letterhead of

11  "Edward L. Scarff." *See* Makara Decl., Ex. L. In addition to repeating the demands from the

12  March 15, 2001, letter that the Policy be terminated immediately and that a check for the net cash

13  surrender value be sent to Edward Scarff at the Howard Street address, the March 26, 2002, letter

14  enclosed a copy of the trust agreement and noted that Harold Scarff was the sole trustee. *See id.*

15  Jackson National responded with a letter dated April 10, 2002, requesting a new surrender letter

16  signed by the trustee with his title, as the previous one had expired after ninety days.[22] *See*

17

18      [19] Plaintiffs assert that this address in Berkeley was Huang's home address, but they cite
   no evidence in support of the assertion, nor do they cite evidence suggesting that Jackson
19  National knew that this address was Huang's home address.

20      [20] Smith has testified that Jackson National makes an address change if it receives a
   "return letter" from the Postal Service and that "[a]n address change can be made by multiple
21  people, it does not have to be the owner" of the policy. Kearl Supp. Decl., Ex. F. Jackson
   National's annual statement for February 2001 also reflects the Berkeley address as the address
22  for the insured. *See* Makara Decl., Ex. T at JNL0453.

23
       [21] The parties provide no evidence as to what, if any, relevant events transpired during
24  this year.

25
       [22] On April 4, 2002, Jackson National had attempted to contact the Policy owner by
26  telephone at (415) 974-5202 but only left a message. *See* Makara Supp. Decl., Ex. A at JNL0152.
   Huang returned the call the following day. *See id.* However, it is unclear from the record whether
27  Huang actually spoke to anyone at Jackson National about the surrender request.

28
   Case No. C 03-03850 JF
   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
   INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
   SUMMARY JUDGMENT
   (JFLC1)

1  Makara Decl., Ex. M. This letter was addressed to the ELS Life Insurance Trust but sent to the

2  attention of Huang at the Howard Street address. *See id.*

3       Jackson National subsequently received a faxed letter dated April 8, 2002, on the

4  letterhead of "Edward L. Scarff," referencing the previous letters and requesting that the Policy

5  be terminated "immediately without delay" and that a check for the net cash surrender value,

6  made payable to Edward Scarff, be sent to the Howard Street address. Makara Decl., Ex. J. The

7  letter purportedly was signed by Edward Scarff and by Harold Scarff as trustee. *See id*. Jackson

8  National complied with the request by issuing a check for $464,633.60[23] ("Surrender Check"),

9  dated April 17, 2002, and sending it to Huang's attention at the Howard Street address.[24] *See*

10  Makara Decl., Ex. N; Gregory Opp'n Decl., Ex. 13. However, the Surrender Check was made

11  payable to the ELS Life Insurance Trust rather than to Edward Scarff, as had been requested. *See*

12  Makara Decl., Ex. N. Jackson National does not dispute that Huang received the Surrender

13  Check and forged the endorsements of Edward Scarff and Harold Scarff on it. *See* Reply at 6; *see*

14  *also* Opp'n at 9. Huang has testified that the Surrender Check was deposited into Edward

15  Scarff's personal checking account, as well as one or more other accounts.[25] *See* Kearl Decl., Ex.

16

17      [23] Jackson National imposed a "surrender charge" of $19,350.00. *See* Gregory Opp'n

18  Decl., Ex. 13. In addition, Plaintiffs assert that the ELS Life Insurance Trust incurred federal and
    state tax liability for the disbursement in the amount of $33,023.25. *See* Opp'n at 9. The Court

19  notes that the total of federal and state taxes withheld, as indicated on the IRS Form 1099-R cited
    by Plaintiffs in support of this assertion, is $33,134.78. *See* Gregory Opp'n Decl., Ex. 4.

20  Plaintiffs have provided no explanation of this discrepancy.

21      [24] Smith has testified that, when Jackson National receives a surrender request for a life

22  insurance policy that is owned by an irrevocable life insurance trust, it (1) verifies the signatures
    by comparison to an earlier signature document, (2) terminates the policy in the system, and (3)

23  produces a check for the surrender value. *See* Kearl Decl., Ex. E at 50-51. If comparison of the
    signatures reveals some dissimilarity, a notarized signature might be requested. *See id*. at 52-53.

24  However, this testimony did not address the steps actually taken with respect to the surrender

25  request at issue in this case.

26      [25] Although the parties do not dispute their mutual assertion that Huang first deposited the

27  Surrender Check into the bank account for the ELS Life Insurance Trust and then transferred the
    funds to other bank accounts, this assertion is not supported clearly by the evidence cited, *see*

28
    Case No. C 03-03850 JF
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
    INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
    SUMMARY JUDGMENT
    (JFLC1)

1    G at 335. Huang is alleged subsequently to have misappropriated these funds for her own benefit.

2    *See* First Am. Compl. ¶ 29.

3         In September 2002, Edward Scarff contacted Jackson National and reported that he had

4    not signed for or authorized the surrender of the Policy. *See* Makara Decl., Ex. O; Makara Supp.

5    Decl., Ex. A at JNL0151. On October 2, 2002, Edward Scarff signed and submitted to Jackson

6    National a "Claimant's Check Forgery Affidavit," attesting to the fact that the endorsement on

7    the Surrender Check was a forgery and was not written or authorized by him and that he had not

8    received any benefit from the check. *See* Kearl Decl., Ex. C at 110-11; Kearl Decl., Ex. D at

9    JNL0110. Jackson National referred the matter to Northern Trust Company with the instruction

10   to "proceed through the proper banking channels for reimbursement." Makara Decl., Ex. P. By

11   letter dated November 26, 2002, Northern Trust Company informed Jackson National that the

12   collection action was being closed for the following reason: "Payee received credit in a deposit

13   made on 5/1/02. Funds were deposited into several different accounts at Wells Fargo." Makara

14   Decl., Ex. Q. With that notification, Jackson National concluded its own investigation and denied

15   Edward Scarff's claim. *See* Makara Decl., Ex. O.

16        In their First Amended Complaint ("FAC"), Edward Scarff, as trustor of the ELS Life

17   Insurance Trust, and Edward Scarff's children, Linda Paine ("Paine"), Susan Nesmith

18   ("Nesmith"), and Catherine Krook ("Krook"), as co-trustees and beneficiaries of the ELS Life

19   Insurance Trust,[26] assert six claims for relief against Jackson National: (1) breach of insurance

20   contract, (2) breach of fiduciary duty, (3) negligence, (4) breach of the implied covenant of good

21   faith and fair dealing, (5) conversion, and (6) breach of trust. They seek compensatory damages

22

23

24   Opp'n at 9; Reply at 6, and it seems to contradict Huang's testimony.

25        [26] Paine, Nesmith, and Krook became co-trustees pursuant to the terms of the Trust
     agreement when Harold Scarff ceased acting as trustee. *See* Kearl Decl., Ex. B at ES08300.

26   According to the FAC, Harold Scarff is afflicted with Alzheimer's disease and was removed as
     trustee of the ELS Life Insurance Trust by the Santa Clara Superior Court in September 2003.

27   *See* FAC at 3 n.1.

28

Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1   in the amount of $1,094,975.35,[27] attorneys' fees and costs, punitive and exemplary damages,

2   and damages for severe emotional distress and mental suffering. Jackson National moves for

3   summary judgment as to all claims.[28]

## II. LEGAL STANDARD

5       A motion for summary judgment should be granted if there is no genuine issue of

6   material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

7   56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that

8   might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. There

9   is a genuine dispute about a material fact if there is sufficient evidence for a reasonable jury to

10  return a verdict for the nonmoving party. *Id*. The moving party bears the initial burden of

11  informing the Court of the basis for the motion and identifying portions of the pleadings,

12  depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of

13  a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the

14  party moving for summary judgment would bear the burden of proof at trial, it has the initial

15  burden of establishing the absence of a genuine issue of fact on each issue material to its case.

16  *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir.

17  2000). Where the party moving for summary judgment would not bear the ultimate burden of

18  persuasion at trial, it must either produce evidence negating an essential element of the

19  nonmoving party's claim or defense or show that the nonmoving party does not have enough

20  evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire &*

21  *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

22  //

23

24      [27] Plaintiffs' calculation of their compensatory damages includes premiums and interest,

25  the surrender charge, and federal and state tax liabilities. *See* Opp'n at 9; *see also supra* note 23.

26      [28] In their opposition brief, Plaintiffs withdrew their claim for breach of trust. *See* Opp'n

27  at 19 n.17. Accordingly, the Court need not address Jackson National's arguments regarding
    summary judgment on this claim.

28
                                                    11
    Case No. C 03-03850 JF
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
    INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
    SUMMARY JUDGMENT
    (JFLC1)

1    If the moving party meets its initial burden, the burden shifts to the nonmoving party to

2    present specific facts showing that there is a genuine issue of material fact for trial. Fed. R. Civ.

3    P. 56(e); *Celotex Corp.*, 477 U.S. at 324. The nonmoving party may not rely on the mere

4    allegations or denials in its pleading in order to preclude summary judgment. Fed. R. Civ. P.

5    56(e); *Anderson*, 477 U.S. at 248. The evidence and all reasonable inferences therefrom must be

6    viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec.*

7    *Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Summary judgment thus is not

8    appropriate if the nonmoving party presents evidence from which a reasonable jury could resolve

9    the material issue in its favor.[29] *Anderson*, 477 U.S. at 248-49; *Barlow v. Ground*, 943 F.2d 1132,

10   1134-36 (9th Cir. 1991).

11                                **III. DISCUSSION**

12   **A.      Breach of Insurance Contract**

13            Plaintiffs first allege that Jackson National breached the insurance contract under which

14   the Policy was issued. The allegations of breach of contract can be grouped into several different

15   categories. First, Plaintiffs allege that Jackson National breached duties it owed to Edward

16   Scarff, including obligations to contact him to confirm the request for a policy loan, to confirm

17   the request to terminate the Policy, and to verify the validity of the Howard Street address. *See*

18   FAC ¶¶ 22, 27, 37, 39. However, no such duties to Edward Scarff are supported by the terms of

19   the contract. The Policy provided that, "[w]hile . . . the Insureds are living, all rights of this

20   Policy belong to the Owner," Makara Decl., Ex. D at JNL0126, and that the "Policy and the

21   application . . . constitute the entire contract between the parties," *id*. at JNL0125. Under the

22   clear terms of the contract, all Policy-related rights belonged to the ELS Life Insurance Trust,

23   which was the owner and beneficiary of the Policy—and thus were to be exercised by Harold

24

25            [29] It is not the Court's task to "'scour the record in search of a genuine issue of triable
     fact.'" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. S.F. Unified Sch.*

26   *Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that the "district court need not examine the
     entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in

27   the opposing papers with adequate references so that it could conveniently be found").

28
                                                12
     Case No. C 03-03850 JF
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
     INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
     SUMMARY JUDGMENT
     (JFLC1)

1 Scarff, who was the trustee—rather than to Edward Scarff, who was the insured. Plaintiffs point

2 to no specific contractual terms creating any of the duties Jackson National allegedly owed to

3 Edward Scarff.

4       Second, Plaintiffs allege that Jackson National breached its duty under the contract to

5 discuss with Edward Scarff or Harold Scarff the impact that the policy loan would have on the

6 value of the Policy and the effect that termination of the Policy would have on the ELS Life

7 Insurance Trust. *See* FAC ¶¶ 22, 27. However, as above, no such duty is supported by the terms

8 of the contract, which provide that the Policy owner may obtain a policy loan and may surrender

9 the Policy for its net cash value while the insured is living, *see* Makara Decl., Ex. D at JNL0129,

10 JNL0135, but do not explicitly obligate Jackson National to advise the insured or the Policy

11 owner of the consequences of these actions.[30]

12       Finally, Plaintiffs allege that Jackson National breached the contract by issuing the Loan

13 Check and the Surrender Check based on requests from and communications with Huang, who

14 was not the Policy owner and thus had no authority with respect to the Policy.[31] This basis for

15

16     [30] Although these allegations appear in the FAC, Plaintiffs appear to have abandoned

17 them implicitly in the course of briefing on the instant motion, as they do not reassert them in
their opposition brief. Plaintiffs similarly appear to have abandoned their allegations in the FAC

18 that Jackson National breached the contract (1) by issuing the policy loan knowing that "assets in
an irrevocable life insurance Trust were to be held in the form of life insurance policies" and that,

19 "[i]n order to ensure that the irrevocable life insurance Trust remained valid, the policies could
not be issued as security for a loan," FAC ¶ 37, (2) by terminating the Policy knowing that, "in

20 order to ensure that the irrevocable life insurance Trust remained valid, the policy could not be
converted to cash, and could only be exchanged within the Trust," FAC ¶ 38, and (3) by

21 distributing the surrender value of the Policy in "conflict[] with the Internal Revenue Service's
regulations governing life insurance Trusts," *id*. The Court notes that, as to the first two

22 allegations, the contract explicitly provided for policy loans and surrender of the Policy and, as to
the third allegation, Plaintiffs never expanded on that purported basis for their breach-of-contract

23 claim.

24

25     [31] Plaintiffs' insistence that Jackson National had a "contractual obligation to deal only

26 with the policy owner," Opp'n at 14, undermines their earlier argument that Jackson National
had a duty to contact Edward Scarff, who was not the Policy owner, regarding the policy loan,

27 surrender request, and changes of address.

28

13

their breach-of-contract claim includes allegations that Jackson National "never attempted to contact" Harold Scarff to confirm that he had requested the policy loan, FAC ¶ 22, and "never personally contacted" Harold Scarff to confirm that he wanted to terminate the Policy, FAC ¶ 27. The essence of this argument appears to be that Jackson National did not take reasonable steps to ensure that the requests and related communications purportedly on behalf of the ELS Life Insurance Trust were legitimate, including compliance with its own anti-fraud procedures, nor did it respond reasonably to indicia of Huang's fraudulent activities, which Plaintiffs assert included "incorrect [S]ocial [S]ecurity numbers, repeated address change requests (including [Jackson National's] sending policy information 'to Carol Huang's attention,' or to her Berkeley, California home), inability to provide original or complete trust documents, and forged signatures that bear no similarity to [signatures on] policy documents in [Jackson National's] possession." Opp'n at 15. In their opposition brief, Plaintiffs focus particularly on Jackson National's alleged contractual duties to perform certain types of verifications, including signature, address-change, and telephone-caller verifications, to "keep policy information confidential," and to "deal only with the designated policy owner." *Id.* at 16. However, while these allegations properly may support a claim for breach of the implied covenant of good faith and fair dealing,[32] they do not describe duties that appear in the terms of the contract itself and thus cannot support a claim for breach of contract.[33]

Based on the foregoing discussion, Jackson National's motion for summary judgment as to Plaintiffs' claims for breach of contract will be GRANTED.[34]

---

[32] *See infra* Part III.C.

[33] Plaintiffs cite no legal authority for their assertion that the evidence supports a claim for breach of contract.

[34] Having granted Jackson National's motion for summary judgment as to Plaintiffs' claim for breach of contract, the Court need not address Jackson National's argument that Plaintiffs may not recover damages for emotional distress based on their breach-of-contract claim.

Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1

**B.    Breach of Fiduciary Duty**

2       Plaintiffs next allege that Jackson National, as the insurer, breached various fiduciary

3  duties it owed to Edward Scarff, as the insured. However, the California Supreme Court has held

4  unambiguously that the relationship between an insured and its insured is not a "true 'fiduciary

5  relationship.'" *Vu v. Prudential Prop. & Cas. Ins. Co.*, 33 P.3d 487, 492 (Cal. 2001).[35] Although

6  California courts have imposed "special and heightened duties" upon insurers in recognition of

7  the fact that the insurer-insured relationship is a "relationship often characterized by unequal

8  bargaining power in which the insured must depend on the good faith and performance of the

9  insurer," these "fiduciary-like duties arise because of the unique nature of the insurance contract,

10  *not* because the insurer *is* a fiduciary." *Id.* (internal citations and quotation marks omitted); *see*

11  *also Tran v. Farmers Group, Inc.*, 128 Cal. Rptr. 2d 728, 735 (Ct. App. 2003) (discussing *Vu* and

12  stating that "an insurer's breach of its 'fiduciary-like duties' is adequately redressed by a claim

13  for breach of the covenant of good faith and fair dealing implied in the insurance contract").

14  Because no fiduciary relationship existed between Jackson National and Edward Scarff, Jackson

15  National's motion for summary judgment as to Plaintiffs' claim for breach of fiduciary duty will

16  be GRANTED.

17  **C.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

18       Plaintiffs next claim that Jackson National breached the implied covenant of good faith

19  and fair dealing contained in the insurance contract. There is an implied covenant of good faith

20  and fair dealing in every contract that "neither party will do anything which will injure the right

21  of the other to receive the benefits of the agreement." *Comunale v. Traders & Gen. Ins. Co.*, 328

22  P.2d 198, 200 (Cal. 1958). Thus, like any other party to a contract, an insurer owes a general duty

23  of good faith and fair dealing. *Love v. Fire Ins. Exch.*, 271 Cal. Rptr. 246, 251 (Ct. App. 1990).

24  The implied covenant of good faith and fair dealing "rests upon the existence of some specific

25

26       [35] Although Plaintiffs cite *Vu*, they appear to rely upon California cases that were decided
27  before *Vu* settled the question as to whether insurers are fiduciaries in arguing that their claim for
breach of fiduciary duty is viable.

28                                                    15

contractual obligation" and is "limited to assuring compliance with the express terms of the contract." *Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*, 14 Cal. Rptr. 2d 335, 338-39 (Ct. App. 1993); *see also Foley v. Interactive Data Corp.*, 765 P.2d 373, 389 (Cal. 1988) (explaining that "[t]he covenant of good faith and fair dealing was developed in the contract arena and is aimed at making effective the agreement's promises"); *Egan v. Mutual of Omaha Ins. Co.*, 620 P.2d 141, 145 (Cal. 1979) (stating that the precise nature and scope of the duty imposed by the implied covenant of good faith and fair dealing depends on the particular contractual purposes). As such, it cannot be applied to "create obligations not contemplated in the contract." *Racine & Laramie*, 14 Cal. Rptr. 2d at 339. A party will be found to have violated the implied covenant of good faith and fair dealing if it "subjectively lack[ed] belief in the validity of its act or if its conduct [was] objectively unreasonable," regardless of the party's motive.[36] *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 727 (Cal. 1992).

The two contractual duties at issue in Plaintiffs' claim for breach of the implied covenant are Jackson National's obligations under the Policy to make a policy loan to the owner of the Policy—the ELS Life Insurance Trust—after receiving a signed, written request, *see* Makara Decl., Ex. D at JNL0135, and to distribute the net cash value of the Policy after receiving a surrender request from the Policy owner while the insured is living, *see id.* at JNL0129.[37] In response to requests purportedly from Harold Scarff, trustee of the ELS Life Insurance Trust, Jackson National complied with these contractual obligations in the sense that it issued the Loan

---

[36] To the extent that the California Court of Appeal's decision in *Careau & Co. v. Security Pacific Business Credit, Inc.*, 272 Cal. Rptr. 387, 399-400 (Ct. App. 1990) (requiring a showing of a "failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act"), on which Jackson National relies, would impose a higher standard than the one expressed by the California Supreme Court in *Carma Developers*, the Court will apply the latter standard.

[37] As in their claim for breach of contract, Plaintiffs appear to allege additional contractual obligations that are not supported by the actual terms of the contract. Already having rejected these allegations, the Court will not address them further here.

Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1   Check and the Surrender Check, both of which were made payable to the ELS Life Insurance

2   Trust but neither of which, according to Plaintiffs, actually was used for the benefit of the ELS

3   Life Insurance Trust. The inquiry for purposes of Plaintiffs' claim for breach of the implied

4   covenant of good faith and fair dealing thus is whether, in light of its express contractual

5   obligations, Jackson National's actions were objectively unreasonable.[38]

6        In support of its motion, Jackson National argues only that the implied covenant of good

7   faith and fair dealing "does not create duties that extend beyond the express terms of the

8   contract," Mot. at 15, that it "fully complied with its express contractual obligations," *id*. at 16,

9   that such compliance is an "absolute defense" to Plaintiffs' claim,[39] *id*., and that its "failure to

10  detect forgery on the loan and surrender requests" does not establish a breach of the implied

11  covenant where it processed the requests after verifying Harold Scarff's authority as trustee and

12  comparing signatures but did not know of "any facts that would put it on notice that the requests

13  were forged," Reply at 10-11. Plaintiffs' entire argument regarding Jackson National's acts that

14  allegedly breached the implied covenant is as follows:

15       [Jackson National] failed to discharge its obligations to accept policy changes and
         policy loan and surrender requests <u>only</u> from the policy Owner; refused to perform
16       signature and identity verifications as required by the contract and [Jackson
         National's] internal security policies; consciously and deliberately released
17       confidential policy information to persons other than the designated policy owner;
         and failed to protect the reasonable expectation of its insured that the agreed
18       purpose of the contract—to provide a significant policy benefit to Edward Scarff's
         heirs upon his death—would not be frustrated by "act[s] of deception against [the]
19       policy owner."[40]

20

21       [38] Plaintiffs present no evidence that Jackson National acted with the subjective belief that

22  the requests for the policy loan and termination of the Policy were fraudulent.

23       [39] This assertion cannot be correct. It is implicit in an insurer's express obligation to make

24  loans or payments under a policy that the insurer take reasonable steps to ensure that such loans

    or payments are made to the person or persons entitled to receive them. The question in this case

25  is whether Jackson National's conduct in this regard was so unreasonable as to injure Plaintiffs'

    rights under the insurance contract.

26

27       [40] In the course of making this argument—as well as many of their other

28  arguments—Plaintiffs cite no evidence in support of these assertions, forcing the Court not only

                                                17

1   Opp'n at 18-19. What Plaintiffs appear to be arguing, as they did in their claim for breach of

2   contract, is that Jackson National did not take reasonable steps to ensure that the requests and

3   related communications purportedly on behalf of the ELS Life Insurance Trust were legitimate,

4   including compliance with its own anti-fraud procedures, nor did it respond reasonably to indicia

5   of Huang's fraudulent activities.

6       Reasonableness usually is a question of fact. Neither party cites—and the Court has not

7   found—any case applying California law that would guide the trier of fact in determining

8   whether Jackson National's actions were objectively reasonable under the particular

9   circumstances presented by this case. However, one frame of reference for assessing the

10  reasonableness of Jackson National's actions is the company's own anti-fraud procedures.

11      The anti-fraud procedures Jackson National is alleged to have violated are contained in its

12  "Anti-Fraud Plan," which prescribes procedures for detecting and preventing fraud[41] and for

13  reporting suspected fraud to the company's Special Investigation Unit ("SIU") for further

14  investigation and disposition. *See* Gregory Opp'n Decl., Ex. 2. The summary of the "Anti-Fraud

15  Plan" that has been submitted as evidence generally describes the fraud detection and prevention

16  procedures for each department, which include the following procedures: (1) the customer

17  relations department is required to conduct a "thorough investigation" when there is "evidence of

18  inappropriate actions,"[42] (2) the "Customer Service Center . . . [h]as specific requirements to

19  _____

20  to attempt to discern which specific factual allegations are being referenced but also to search for
    evidentiary support in Plaintiffs' lengthy statement of facts.

21

22      [41] Jackson National's "Procedural Guidelines" for its Special Investigation Unit make

23  clear that it is aware of the potential for fraudulent activities involving its policies. *See* Gregory
    Opp'n Decl., Ex. 1. "Fraud" is defined in the handbook as "an act of deception against a

24  policyholder or the company with the intent of obtaining money from one or both," and it
    includes "[u]nauthorized surrendering of a policy to obtain its cash value," "[u]nauthorized loan

25  or withdrawal transactions on a policy," and "[u]nauthorized cashing/depositing of a check that
    was correctly issued at the request of a policyholder." *Id.* at JNL0350.

26

27      [42] The summary does not elaborate on what constitutes "evidence of inappropriate
    actions."

28                                                          18

Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1    process loans [and] surrenders . . . , including verification of signatures, and has procedures on

2    when to send a confirmation letter regarding action taken on a policy,"[43] (3) verifications of

3    changes of address are to be sent to both the old and new addresses, and (4) telephone service

4    representatives are required to "verify the identity of the person calling" about a policy and are

5    authorized to permit only a policy owner or the policy's servicing broker to "access policy

6    information." *Id*. at JNL0342. Employees of these departments are required to forward "[a]ll

7    potential fraud cases" to the SIU.[44] *Id*. In addition to investigating incidences of suspected fraud,

8    the SIU, among other things, "reviews a daily report that lists all policies on which a withdrawal

9    transaction (e.g., loan, surrender, transfer) has been requested and which have had address

10    changes within the last 90 days." *Id*. at JNL0343.

11         Plaintiffs assert several times in their opposition brief that Jackson National did not

12    prepare the aforementioned daily report or notify the SIU of any requested address changes for

13    the Policy, *see* Opp'n at 6, 8 n.9, 9, despite the fact that address changes were requested—and

14    new addresses were used—in the course of processing both the request for the policy loan and

15    the request to terminate the Policy. Although Plaintiffs do not properly cite evidence for this

16    allegation or reassert the allegation in the course of presenting their legal arguments with respect

17    to *any* of their claims, the temporal proximity of the address changes and requests for funds is

18    apparent from the record, and Jackson National clearly recognized that Plaintiffs meant to raise it

19    as a basis for at least one of their claims, because it addresses the daily-report provision in its

20    reply brief. There, Jackson National argues that the requirement applies only when the policy

21    address is changed to be the same as the broker's address. This narrow interpretation is not

22

23        [43] No information has been provided to the Court regarding what these specific

24    requirements and procedures are beyond the testimony of the director of Jackson National's
customer service center that Jackson National employees verify signatures on loan and surrender

25    requests by comparing them to the signatures on earlier documents, such as the original policy
application. *See supra* notes 15, 24.

26

27        [44] The summary does not list criteria for determining  in which cases fraud potentially
exists.

28

Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1   supported by a fair reading of the provision. The pertinent part of the summary of the "Anti-

2   Fraud Plan" is as follows:

> 3   The SIU also reviews a daily report that lists all policies on which a withdrawal
> 4   transaction (e.g., loan, surrender, transfer) has been requested and which have had address changes within the last 90 days. As a rule, they investigate any policy that the policyowner's address has been changed [sic] to the same address as the
> 5   broker of record.

6   Gregory Opp'n Decl., Ex. 2 at JNL0343. The Court does not read the second sentence to limit the

7   first. Rather, the second sentence appears to impose a requirement, in addition to the one in the

8   first sentence, that the SIU investigate any policy in which the policy owner's address has been

9   changed to be the same as the broker's address *any time* such a change is made (i.e., regardless of

10  whether such a change occurs within ninety days of a request for a withdrawal transaction).

11          The larger issue, however, is that Jackson National has not presented any evidence that it

12  complied with this provision. The fact that the SIU reviews such a report on a daily basis reveals

13  Jackson National's own judgment that an address change within ninety days of a withdrawal

14  transaction signals potential fraudulent activity and suggests that such review is one reasonable

15  method for detecting and preventing fraud. In the absence of any evidence that it complied with

16  its own anti-fraud procedure, Jackson National cannot meet its initial burden on summary

17  judgment to establish the absence of a genuine issue of fact as to the objective reasonableness of

18  its actions. Accordingly, Jackson National's motion for summary judgment as to Plaintiffs' claim

19  for breach of the implied covenant of good faith and fair dealing will be DENIED.[45]

20  **D.   Negligence**

21          Plaintiffs allege that Jackson National is liable to them under a theory of negligence. This

22  claim is based on allegations that Jackson National breached its duties to "accept policy changes

23  and policy loan and surrender requests <u>only</u> from the policy owner," confirm that Huang was

24

25          [45] Having found one triable issue of material fact that precludes summary judgment as to

26  this claim, the Court will not address the parties' arguments and evidence with respect to other

27  provisions of the "Anti-Fraud Plan" or other allegedly unreasonable activities on the part of Jackson National.

28                                          20

1   "acting under the policy owner's direction and oversight," "contact the policy owner and its

2   insured to discuss the ramifications" of requests for policy loans and surrender of the Policy, and

3   comply with its own anti-fraud procedures.[46] Opp'n at 17-18.

4       Under California law, negligence "is not among the theories of recovery generally

5   available against *insurers*." *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 84 Cal. Rptr. 2d 799,

6   802 (Ct. App. 1999); *see also Foley v. Interactive Data Corp.*, 765 P.2d 373, 390 (Cal. 1988)

7   (observing that, in the context of insurance contracts, "courts have held that breach of the implied

8   covenant will provide the basis for an action in tort"). Plaintiffs correctly identify two cases in

9   the insurance context where courts have found exceptions to this general rule.[47] *See Johnson v.*

10  *Mut. Benefit Life Ins. Co.*, 847 F.2d 600, 603-04 (9th Cir. 1988) (reversing summary judgment in

11  favor of insurer on insured's claim under California law for negligent infliction of serious

12  emotional distress where there was genuine issue of material fact as to whether insured, who was

13  uninsurable because of history of cancer, in fact suffered serious emotional distress from

14  receiving incorrect termination notices, facing two years of billing errors, and having to seek

15  psychiatric aid); *Butcher v. Truck Ins. Exch.*, 92 Cal. Rptr. 2d 521, 537 (Ct. App. 2000)

16  (recognizing claim for negligent misrepresentation against insurer where insurer, which has

---

18      [46] Some of these alleged duties are based on the declaration of Kirk Dryden ("Dryden"),
19  whom Plaintiffs have retained as an expert witness. *See* Dryden Opp'n Decl. The Court notes
    that, while Dryden opines on the standards of care applicable to the instant case based on the
20  documents produced by Jackson National, "industry practices," and his own experience,
    Plaintiffs have provided no foundation for his testimony as an expert. Dryden's declaration does
21  not describe his qualifications other than stating that he owns and operates Kirk P. Dryden
    Insurance & Financial Services and providing his California insurance license number, and it
22  does not attach a copy of his resume. *See id.* ¶ 1. Although Jackson National has objected to
    Dryden's declaration on this ground, among others, Plaintiffs have not attempted to rectify this
23  problem through any submission to the Court in the more than three months since Jackson
    National filed its objection. Notwithstanding these observations, the Court has not relied upon
24  Dryden's declaration and thus need not rule formally on Jackson National's objection.
25
26      [47] Plaintiffs' attempt to apply a theory of liability from *FNS Mortgage Service Corp. v.*
    *Pacific General Group, Inc.*, 29 Cal. Rptr. 2d 916, 921 (Ct. App. 1994), regarding liability to
27  third parties for *physical* harm resulting from failure to exercise reasonable care is misplaced.

28                                              21
    Case No. C 03-03850 JF
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
    INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
    SUMMARY JUDGMENT
    (JFLC1)

1  affirmative duty to disclose due to disparity in knowledge between insurer and insured, fails to

2  deliver agreed-upon coverage). However, neither of these cases is sufficiently analogous to the

3  instant case to persuade the Court to find an exception, based upon the facts and alleged duties in

4  this case, to the general rule that insurers are not liable in negligence. Accordingly, Jackson

5  National's motion for summary judgment as to Plaintiffs' claim for negligence will be

6  GRANTED.

7  **E.   Conversion**

8          In the FAC, Plaintiffs appear to allege that Jackson National is directly liable for

9  conversion rather than stating a claim premised on secondary liability. Specifically, they allege

10  that Jackson National "conver[ted] . . . plaintiff Edward Scarff's property," FAC ¶ 77, and the

11  claim appears to be based on Jackson National's issuance of both the Loan Check and the

12  Surrender Check and its subsequent "fail[ure] and refus[al] . . . to return the property to plaintiff

13  Edward Scarff," FAC ¶ 76; *see also* FAC ¶ 74. However, in their opposition brief, Plaintiffs

14  appear to shift their theory of liability, asserting that "[t]he factual record, as well as Carol

15  Huang's own deposition testimony, provide [sic] a detailed description of how *she*

16  misappropriated life insurance policy benefits belonging to Plaintiffs" and that "the *only* issue

17  [for] the Court [to] decide is whether sufficient evidence exists to support a liability claim as

18  against [Jackson National] for having *aided and abetted and/or wrongfully conspired* with Carol

19  Huang to convert these benefits." Opp'n at 20 (emphasis added). Accordingly, the Court will

20  analyze Plaintiffs' conversion claim as a claim premised on secondary liability.

21          The elements of an "action" for civil conspiracy—which is not a claim in itself but rather

22  is "a legal doctrine that imposes liability on persons who, although not actually committing a tort

23  themselves, share with the immediate tortfeasors a common plan or design in its

24  perpetration"—are "the formation and operation of the conspiracy and damage resulting to

25  plaintiff from an act or acts done in furtherance of the common design." *Applied Equip. Corp. v.*

26  *Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994) (internal quotation marks omitted).

27  Liability for aiding and abetting the commission of an intentional tort, which is a basis for

28
                                                    22

1   liability separate from conspiracy liability, *see Neilson v. Union Bank of California, N.A.*, 290 F.

2   Supp. 2d 1101, 1133-36 (C.D. Cal. 2003) (discussing different requirements); *Casey v. U.S. Bank*

3   *Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 406 n.2 (Ct. App. 2005) (adopting reasoning from *Neilson*),

4   may be imposed if a person, knowing that another person's conduct constitutes a breach of duty,

5   "gives substantial assistance or encouragement to the other to so act," *Saunders v. Superior*

6   *Court*, 33 Cal. Rptr. 2d 438, 446 (Ct. App. 1994).

7        Plaintiffs' conversion claim fails under both theories of secondary liability, because they

8   have failed to produce any evidence that Jackson National shared with Huang a common plan or

9   design to convert the property of the ELS Life Insurance Trust or that Jackson National assisted

10   or encouraged Huang while knowing that her conduct constituted a breach of duty. Plaintiffs

11   argue that the following evidence "amply supports" their conversion claim:

12        [Jackson National] accepted policy changes and policy loan and surrender requests from
        Carol Huang, and did so even though she is not listed as an insured, policy owner, or
13        beneficiary on the . . . policy; released confidential policy information to Ms. Huang
        when she requested it (and in the absence of proper identification); performed multiple
14        address changes at Ms. Huang's request; ignored obvious indicia of Ms. Huang's
        fraudulent activity; dispersed policy benefit funds "directly to Ms. Huang's attention";
15        and wholly and utterly failed to adhere to internal security procedures enacted by
        [Jackson National] to protect its insured from "act[s] of deception against a policy
16        owner."

17   Opp'n at 20-21. However, even if these allegations, as stated in Plaintiffs' own words, were

18   supported fully by the evidence, they are insufficient to raise a genuine issue of material fact as to

19   whether Jackson National conspired with Huang or aided and abetted a breach of her duties. The

20   Court also notes that nowhere in its review of the FAC and Plaintiffs' opposition papers has it

21   found an explicit assertion that Jackson National *actually knew* that Huang was engaging in any

22   wrongful activities with respect to the Policy, much less any evidence of such knowledge.

23   Accordingly, Jackson National's motion for summary judgment as to Plaintiffs' claim for

24   conversion will be GRANTED.

25   **F.    Edward Scarff's Standing**

26        Jackson National moves for summary judgment as to all claims brought by Edward

27   Scarff, who is designated as a plaintiff only in his capacity as the trustor of the ELS Life

28

Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1    Insurance Trust, on the ground that he lacks standing to assert any claims on behalf of the ELS

2    Life Insurance Trust. Except as otherwise provided by statute, every civil action "must be

3    prosecuted in the name of the real party in interest." Cal. Civ. Code § 367. At common law,

4    where a claim is prosecuted on behalf of an express trust, the trustee is the real party in interest.

5    *Saks v. Damon Raike & Co.*, 8 Cal. Rptr. 2d 869, 874 (Ct. App. 1992). Thus, Edward Scarff's

6    attempt to prosecute the only remaining claim—breach of the implied covenant of good faith and

7    fair dealing—as trustor of and on behalf of the ELS Life Insurance Trust is invalid, because he is

8    not the trustee.[48] While Plaintiffs are correct that Edward Scarff, as the party whose life was

9    insured by the Policy, *would* have standing to assert a claim on his own behalf for breach of the

10   implied covenant of good faith and fair dealing, *see, e.g., Cates Constr., Inc. v. Talbot Partners*,

11   980 P.2d 407, 416 (Cal. 1999), he did not *actually* assert the claim on his own behalf.

12   Accordingly, Edward Scarff will be DISMISSED with respect to the remaining claim for breach

13   of the implied covenant of good faith and fair dealing.[49]

14   **G.    Proximate Cause**

15           Jackson National also moves for summary judgment as to all claims on the ground that its

16   actions were not the proximate cause of Plaintiffs' alleged damages. As mentioned above, the

17   only remaining claim is the claim for breach of the implied covenant of good faith and fair

18   dealing. Under California law, proximate cause exists if the defendant (1) in fact caused the

19   injury and (2) reasonably could foresee the risk of injury. *FDIC v. Imperial Bank*, 859 F.2d 101,

20   103 (9th Cir. 1988). While an intentional act of a third person may be deemed a superseding

21   cause of harm that relieves the original actor of liability, no such relief is available if the third

22   person's intentional act was reasonably foreseeable or failure to foresee the act was a factor in the

23

24       [48] This limitation appears to be recognized in the ELS Life Insurance Trust agreement,
25   which provides that the trustee is the entity with the power to commence litigation with respect to
     the Trust or any Trust property. *See* Kearl Decl., Ex. B at ES08303.
26
27       [49] The Court notes that, in light of the relief sought and the Court's rulings on other issues
     presented by the instant motion, this dismissal has little practical effect.
28

Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1  original breach. *See Lucas v. City of Long Beach*, 131 Cal. Rptr. 470, 476 (Ct. App. 1976).

2  Jackson National argues, among other things, that its actions were not the proximate cause of

3  Plaintiffs' alleged injuries, because Huang's intentional fraud was not a foreseeable risk.

4  However, Jackson National has failed to satisfy its initial burden of establishing the absence of a

5  genuine issue of fact on this question of foreseeability. Its own anti-fraud procedures recognize

6  the risk of fraud against a policy owner, including unauthorized loan transactions, surrender

7  requests, and cashing or depositing of checks correctly issued at the request of a policy owner.

8  *See* Gregory Opp'n Decl., Ex. 1 at JNL0350; *see also* Gregory Opp'n Decl., Ex. 2. Viewing this

9  evidence in the light most favorable to Plaintiffs, a reasonable jury could resolve the issues of

10  foreseeability and proximate cause in their favor. Accordingly, Jackson National's motion for

11  summary judgment on the basis of the element of causation will be DENIED.

12  **H.   Claims Arising from Policy Loan**

13       Jackson National moves for partial summary judgment with respect to the claims arising

14  from the policy loan on the ground that they are barred by the statute of limitations.[50] A four-year

15  statute of limitations applies when a plaintiff brings a claim for breach of the implied covenant of

16  good faith and fair dealing under a contract theory. *Frazier v. Metro. Life Ins. Co.*, 214 Cal. Rptr.

17  883, 889 (Ct. App. 1985); Cal. Civ. Proc. Code § 337(1). Typically, an action accrues on the date

18  of injury. *See Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 926 (Cal. 1988). Here, the injury occurred on

19  or about October 20, 1997, when Jackson National issued the Loan Check, and the original

20  complaint was filed in state court on July 18, 2003, which was more than four years later.

21  However, in appropriate cases, the common law rule of accrual is modified by what is known as

22

23  [50] In its original moving papers, Jackson National argued, as a separate basis for partial
24  summary judgment with respect to these claims, that there is undisputed evidence that Edward
     Scarff requested the policy loan and endorsed the Loan Check. However, in its reply brief,
25  Jackson National appears implicitly to have conceded that it is not entitled to summary judgment
     on this ground, stating that "there is a dispute . . . as to whether Edward Scarff's signature [on the
26  'Policy Loan Request' form] is genuine" but that, in any case, it is "undisputed that neither
27  [Edward Scarff's nor Nancy Scarff's] signature was required, as only Harold Scarff was
     empowered by the Trust to act on its behalf." Reply at 3 n.3.

28
Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1    the "discovery rule," which provides that the "accrual date of a cause of action is delayed until

2    the plaintiff is aware of her injury and its negligent cause. A plaintiff is held to her actual

3    knowledge as well as knowledge that could reasonably be discovered through investigation of

4    sources open to her." *Id.* at 926-27 (internal citations omitted). The "discovery rule" imposes on

5    plaintiffs a duty of reasonable investigation, and "a *suspicion* of wrongdoing, coupled with a

6    knowledge of the harm and its cause, will commence the limitations period." *Id.* at 928. Put

7    slightly differently, "[o]nce the plaintiff has a suspicion of wrongdoing, and therefore an

8    incentive to sue, she must decide whether to file suit or sit on her rights." *Id.* Normally,

9    resolution of the statute-of-limitations issue is a question of fact. *Id*.

10        Jackson National argues that the "discovery rule" does not apply and consequently that

11   Plaintiffs' claims arising from the policy loan are barred, because "both the Trustee and Edward

12   Scarff had ample and ongoing opportunities to learn about the Policy Loan. They had only to

13   read the mail that Jackson National addressed to the Trust at Edward Scarff's business address."

14   Mot. at 20. Jackson National also argues that Plaintiffs had "constructive notice of the Policy

15   Loan, regardless of the availability to them of information about the loan," because Edward

16   Scarff "effectively appointed Huang his agent" for purposes of "reading and responding to all of

17   his personal and business correspondence." *Id.* Edward Scarff, however, obviously did not

18   authorize Huang to commit fraud or embezzle his assets, as she has admitted doing. Moreover,

19   the Court concludes that there is at least a triable issue of fact as to whether *Harold* Scarff, the

20   trustee of the ELS Life Insurance Trust, had or should have had a suspicion of Huang's alleged

21   wrongdoing or knowledge of any harm. *See Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402,

22   1406 (9th Cir. 1995) (holding that a defendant raising the statute of limitations as an affirmative

23   defense has the burden of proving the action is time barred).

24        The ELS Life Insurance Trust—not Edward Scarff—was the owner of the Policy, and

25   Plaintiffs assert the claims of the ELS Life Insurance Trust—not the claims of Edward Scarff—in

26   this lawsuit. Pursuant to the ELS Life Insurance Trust agreement, Edward Scarff conveyed all of

27   his right, title, and interest in the Policy to the trustee, so the proper inquiry for statute-of-

28

26

1   limitations purposes is whether the *trustee's* lack of suspicion of Huang's wrongdoing and/or

2   lack of knowledge of harm is established sufficiently to trigger the "discovery rule"—or at least

3   to preclude summary judgment that the claim is time-barred.  The evidence does not establish

4   beyond dispute that Harold Scarff knew or should have known of the harm allegedly caused by

5   Huang in connection with the policy loan or that he suspected or should have suspected any

6   wrongdoing on her part more than four years before this lawsuit was commenced. To the

7   contrary, there is evidence that Jackson National sent its correspondence with respect to the

8   request for a policy loan, the Loan Check itself, and its annual statements regarding the Policy,

9   which reflected the policy loan, to various addresses in California and sometimes to the attention

10  of Huang herself, who is the individual accused of the very fraud at issue, through 2002. In

11  addition, Jackson National itself has submitted evidence that its files do not indicate that it ever

12  sent any correspondence relating to the Policy to Arizona, which is where Harold Scarff lived.

13  *See* Smith Decl. ¶ 5;[51] Kearl Decl., Ex. C at 99. As for Jackson National's argument regarding

14  constructive notice, there is no evidence that Harold Scarff appointed Huang as an agent for the

15  ELS Life Insurance Trust.

16      Although Plaintiffs may not be completely blameless—for example, it appears that

17  Jackson National did not have an Arizona address for the Trust in part because none was

18  provided at the time the Policy was amended to name the ELS Life Insurance Trust as the owner

19  of the Policy—that possibility does not alter the Court's conclusion that, when viewing the

20  evidence and all reasonable inferences therefrom in the light most favorable to Plaintiffs, a

21  reasonable jury could conclude that Harold Scarff was not on notice of any harm to the ELS Life

22  Insurance Trust and neither suspected nor should have suspected Huang's alleged wrongdoing

23  from his mere failure to receive the correspondence that Jackson National was sending to

24

25      [51] Plaintiffs object that Smith's declaration fails to establish his personal knowledge of the
        contents of Jackson National's files. However, Smith is employed as director of Jackson
26      National's customer service center, Smith Decl. ¶ 2, and he states that he has reviewed the
        relevant files as they are kept by Jackson National in the ordinary course of business, *see id.* ¶ 3.
27      Accordingly, Plaintiffs' objection is OVERRULED.

28
Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)

1   Huang's attention.[52] Accordingly, Jackson National's motion for summary judgment with respect

2   to the claims arising from the policy loan will be DENIED.

3   **I.      Punitive Damages**

4           Jackson National moves for summary judgment that Plaintiffs are not entitled to punitive

5   damages. In order to receive punitive damages, Plaintiffs must prove, by clear and convincing

6   evidence, that Jackson National is "guilty of oppression, fraud, or malice." Cal. Civ. Code §

7   3294(a). "Oppression" is defined as "despicable conduct that subjects a person to cruel and

8   unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c)(2). "Fraud" is

9   defined as "an intentional misrepresentation, deceit, or concealment of a material fact known to

10  the defendant with the intention on the part of the defendant of thereby depriving a person of

11  property or legal rights or otherwise causing injury." *Id.* § 3294(c)(3). "Malice" is defined as

12  "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct

13  which is carried on by the defendant with a willful and conscious disregard of the rights or safety

14  of others." *Id.* § 3294(c)(1). Based on the undisputed evidence, the Court finds that Plaintiffs

15  not entitled to punitive damages, because, at a minimum, they cannot prove, by clear and

16  convincing evidence, that Jackson National acted with the requisite conscious disregard or intent.

17  Accordingly, Jackson National's motion for summary judgment as to Plaintiffs' prayer for

18  punitive damages will be GRANTED.

19  **J.      Damages for Emotional Distress**

20          Jackson National moves for summary judgment that Plaintiffs are not entitled to damages

21  for emotional distress. The Court already has disposed of this issue in the context of Plaintiffs'

22  claim for breach of contract. *See supra* note 34. Here, it addresses the issue in the context of the

23  remaining claim for breach of the implied covenant of good faith and fair dealing. Jackson

24  National acknowledges that, in the insurance context, "an insured may recover damages not

25

26

27  _____

    [52] The fact that Harold Scarff at some point became afflicted with Alzheimer's disease
    also is a factor that plays into what he may have known or suspected.

28                                          28

1   otherwise available in a contract action, such as emotional distress damages resulting from the

2   insurer's bad faith conduct." *Cates Constr., Inc. v. Talbot Partners*, 980 P.2d 407, 416 (Cal.

3   1999). Its only asserted ground for summary judgment as to damages for emotional distress

4   stemming from breach of the implied covenant of good faith and fair dealing is that it "has shown

5   that it did not breach this implied covenant." Mot. at 23. However, the Court has denied Jackson

6   National's motion for summary judgment as to Plaintiffs' claim for breach of the implied

7   covenant.

8        Although Jackson National's argument standing alone is insufficient to warrant summary

9   judgment in its favor on this issue, Plaintiffs' own argument their opposition brief makes clear

10  that summary judgment is appropriate. Plaintiffs have claimed "mental anguish" only on the part

11  of Edward Scarff, as the insured. Opp'n at 25. However, Edward Scarff has not brought a claim

12  for breach of the implied covenant in his capacity as the insured. Damages for Edward Scarff's

13  alleged emotional distress are not recoverable by the ELS Life Insurance Trust. Accordingly,

14  Jackson National's motion for summary judgment as to Plaintiffs' prayer for damages for

15  emotional distress will be GRANTED.

16                                **IV. ORDER**

17       Good cause therefore appearing, IT IS HEREBY ORDERED that Defendant Jackson

18  National Life Insurance Company's motion for summary judgment or, in the alternative, partial

19  summary judgment is GRANTED IN PART and DENIED IN PART.

20

21

22

23  DATED: June 24, 2005

24

25                                    /s/ (electronic signature authorized)
                                      JEREMY FOGEL
26                                    United States District Judge

27

28                                    29

This Order has been served upon the following persons:

Joseph W. Cotchett          plee@cpsmlaw.com

Philip L. Gregory           pgregory@cpsmlaw.com, esterling@cpsmlaw.com

Kurtis J. Kearl             kkearl@reedsmith.com

Nanci E. Nishimura          scarff@cpsmlaw.com

Robert D. Phillips , Jr.    RPhillips@ReedSmith.com, Lvieland@ReedSmith.com

Frank M. Pitre              fpitre@cpsmlaw.com, mnewman@cpsmlaw.com

Elizabeth Pritzker          epritzker@cpsmlaw.com

Mary K. Kator
Jackson National Life Insurance Company
Legal Department
1 Corporate Way
Lansing, MI 48951

Case No. C 03-03850 JF
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT JACKSON NATIONAL LIFE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT
(JFLC1)